UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISION

EPICUREAN DEVELOPMENTS, LLC, and
THE CLUB AT 4200, LLC,                          Case No. 18-10685

        Plaintiffs,                             Honorable Nancy G. Edmunds

v.

SUMMIT TOWNSHIP, JAMES DUNN,
MEGHAN DOBBEN, DOUG HOYT, BOB
DUBOIS, MIKE TRUDELL, TODD
EMMONS, MIKE WAY and JOHN
WORDEN,

        Defendants.

_____/

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

        This matter comes before the Court on Defendant Summit Township's ("Township")

and Defendants Dunn, Dobben, Hoyt, Dubois, Trudell, Emmons, Way, and Worden's

(collectively "Defendants") July 18, 2018 Motion for Judgment on the Pleadings, based on

Collateral Estoppel and Res Judicata, as well as a series of affirmative defenses.  The

Township is a Michigan municipal corporation located in Jackson County, Michigan.

Defendants Dunn, Dobben, Hoyt, Dubois, Trudell, Emmons, and Way, were at all times

relevant, the elected officials of the Township ("Elected Officials").  Defendant Worden was

at all times relevant the zoning official for the Township.  Plaintiff Epicurean Developments

and Plaintiff The Club at 4200 (collectively "Plaintiffs") filed a response August 12, 2018

and Defendants filed a reply brief August 27, 2018.  The Court heard oral arguments on

September 12, 2018.

## I.   BACKGROUND

This case arises out of Plaintiffs' attempts to obtain building permits and approvals to use their property located at 4200 Sprint Arbor Road, Summit Township, Michigan (the "Property"), in a C-2 zoning district, for a proposed swingers club.  The Michigan Court of Appeals (MCOA) has already examined the same set of occurrences in previous litigation and some of their factual findings are included here below.

In January 2015, Plaintiffs applied to the Township for a building permit to renovate the Property.  "[P]laintiffs' website [www.theclubat4200.com] specifically advertised the upcoming venue as a 'New York style dance club which features state of the art club sound and active lighting system [sic] tantalizing the senses. . . .[w]ith high ceilings and a modern atmosphere. . . .this dance club will leave you breathless.' " *Epicurean Developments, LLC v. Summit Twp.*, No. 329060, 2017 WL 786880, at *9 n.9 (Mich. Ct. App. Feb. 28, 2017). "[P]laintiffs were not forthcoming with their proposed use, failing to check the 'night club' box under the list of nonresidential uses outlined on the application. . . .Instead, they checked "other" and vaguely described their proposed use as a 'private membership club.' " *Epicurean Developments, LLC v. Summit Twp.*, No. 329060, 2017 WL 786880, at *9 n.9 (Mich. Ct. App. Feb. 28, 2017).

In February 2015, believing Plaintiffs only planned a private membership club, the Township issued a building permit approving renovation of the 10,000 square foot building "to use as 'private membership club' per building application."  (Compl. Ex. E, Dkt. 1-2, at 33; PgID 46.)  Defendants issued the permit believing the building renovations complied with the building's C-2 zoning district under the "Clubs and Lodges" category of permissible uses within C-2 districts of the local zoning ordinance.  Over the next month however the

Township came to understand the actual intended use and the scope of the activities planned for the Property. "[P]laintiffs' proposed land use constituted much more than 'a private membership club,' or a meeting or gathering place for an organization or group united by a common purpose or interest. Rather, it constituted, in effect, a 'nightclub' with various amenities." *Epicurean*, 2017 WL 786880, at *9.

Plaintiffs assert Defendants' subsequent actions including revoking their building permit "were taken based solely on the [D]efendants' moral opposition to the nature of [P]laintiffs' proposed business." (Compl. ¶ 14, Dkt. 1, at 3.) Plaintiffs cite that John Worden, the Township Zoning Administrator, said to the supervisor and deputy supervisor of Liberty Township, he intended to cost Plaintiffs great grief and expense, and that he intended to get them to go away. (Affidavits, Dkt. 1-2, at 40-43.) Plaintiffs also describe a March 23, 2015 email Stephen Artz, who is not a defendant, circulated to the Knights of Columbus. In the email, one of the defendants, Mike Trudell, is described as encouraging the Knights to attend a planning meeting where the swingers club would be discussed "to voice their concerns and ask questions. . . .SOME want to get it done FAST AND quietly. . . .no one knows for sure what is really going on and the people that do are no longer talking. . . .If you think that you will hold off and see what happens you will be too late." (Dkt. 1, at 5; PgID 53-56.)

By late March 2015, the Township determined, as the MCOA has subsequently affirmed, that Plaintiffs' intended use of the Property violated the Township Zoning Ordinance and did not qualify under the "Clubs and Lodges" category allowed in the C-2 zoning district. Worden submitted an affidavit to the state court stating "it later became apparent to [the Township] that plaintiffs did not intend for the property to be used solely

as a "private membership club," and that plaintiff Epicurean had not disclosed the actual intended use of the property when it submitted the additional plans to defendant in February 2015." *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *2. The Township's attorneys sent a letter to Plaintiffs clarifying that Plaintiffs' intended land uses required zoning approval since they were beyond those permitted under the zoning ordinance. Also in late March, James Dunn, the Summit Township Supervisor mailed a letter to Plaintiffs notifying them the zoning application for an administrative site plan review was being rescinded requiring that all work cease immediately. The same day the Township hand-delivered a stop work order, directing Plaintiffs to halt all work on the property, rescinding Plaintiffs' Application for Site Plan Review, and suspending all building, mechanical, electrical and/or plumbing permits for the property.

Plaintiffs filed their first of three previous lawsuits, not including the present matter, upon receiving the stop work order. Circuit Court Case No. 15-001519-CH, Plaintiffs filed against the Township in Jackson County Circuit Court ("First State Court Case"). Plaintiffs argued for (1) a Writ of Mandamus and/or Preliminary Injunction; (2) Two counts of Estoppel; (3) Substantive Due Process violations (under both Federal and State Constitutions); (4) Procedural Due Process (under both Federal and State Constitutions); and (5) Equal Protection violations under Article I, Section 2 fo the Michigan Constitution and 14th Amendment of the U.S. Constitution. (Pl. Resp., Dkt. 19, at 10; PgID 487.)

The Township moved for dismissal, asserting that Plaintiffs had not obtained a final decision and their claims were not ripe. The Circuit Court granted the motion and dismissed the constitutional allegations without prejudice for failure to exhaust administrative remedies. In September 2015, Plaintiffs appealed the dismissal to the

MCOA, which later consolidated the first appeal with Plaintiffs' second state court claim (discussed below) and subsequent appeal.

In October 2015, following dismissal of the First State Court Case and while awaiting a decision on their appeal, Plaintiffs filed additional applications with the Township, requesting permit classification within the zoning ordinance under other allowed categories including cultural establishment, fraternal club, cabaret, or bathing establishment. The Township rejected all of these classifications as not consistent with Plaintiffs proposed use. The MCOA has since affirmed that determination stating "the substance of Plaintiffs' proposed use, regardless of its label, was not a permitted use in the C-2 zoning district." *Epicurean*, 2017 WL 786880 at *9. On October 19, 2015, the Township passed a temporary moratorium to prevent approval of any permit under the zoning ordinance with the classification of adult physical culture establishments or bathing establishments stating the zoning ordnance "contains inconsistent, erroneous, and unintended definitions and regulations."[1] (Compl. Ex. J, Dkt. 1-2, at 49; PgID 62.)

In November 2015, Plaintiffs elected to exhaust their administrative remedies without awaiting the appeal to their First State Court Case. Plaintiffs submitted a request to the Zoning Board of Appeal ("ZBA") challenging the Defendants' interpretation of the zoning

---

[1] The moratorium goes on to explain that the definitions of "Adult Physical Culture Establishments," "Bathing Establishment," and "Massage Establishments" overlap but that the zoning ordinance treats them inconsistently considering one a permitted use and the others a conditional use.

Plaintiffs clarify in their Response to Defendants' Motion for Judgment on the Pleadings that the Township's moratoriums were not themselves constitutional violations, and that Defendants' argument about absolute legislative immunity for adopting the moratoriums is superfluous. Rather, Plaintiffs argue the moratoriums provide evidence of Defendants' conspiracy to violate Plaintiffs' constitutional rights.

ordnance and the issuance of the stop-work order. The ZBA reviewed the parties' documents and held a public hearing which included extensive arguments and additional materials. The ZBA concluded in a 6-1 vote that Plaintiffs' intended use of their Property as a swinger's club with aspects of a night club did not fit the definition of "clubs and lodges" under the zoning ordinance and was not a permitted use in the Property's C-2 zoning district.

In December 2015, having exhausted their administrative remedies, Plaintiffs filed a second lawsuit, again against Summit Township, and again in Jackson County Circuit Court contesting the ZBA's final decision, Circuit Court Case No. 15-003265-AA ("Second State Court Case"). Defendants challenged the interpretation of the zoning ordnance and sought review of the Township Zoning Administrator's issuance of the stop-work order. *Epicurean*, 2017 WL 786880 at *6.

Plaintiffs also filed a third lawsuit in this court in February 2016. Here, Plaintiffs alleged federal and state law claims relating to the Township's stop work order, the ZBA's final decision, and the Township's actions in response to Plaintiffs' attempts to obtain approval for their proposed use of the property. On March 18, 2016, Judge O'Meara of the Eastern District of Michigan District Court *sua sponte* dismissed Plaintiffs' state law claims. On May 24, 2016, the court granted Defendants' motion to dismiss based on the *Colorado River* abstention doctrine, and for lack of ripeness. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Judge O'Meara stated "this is an exceptional case which strongly favors abstention in order to avoid duplicative or piecemeal litigation over Plaintiffs' claims. Litigating the claims in state court will conserve judicial resources as well as provide complete relief to

the parties." *Epicurean Developments, LLC v. Summit Township*, No. 16-10609, 2016 WL 2986368 at *3 (E.D. Mich. May 24, 2016). He said, "[t]he state courts are capable of deciding Plaintiffs' federal constitutional claims as well, since those rights are similar to the rights protected under Michigan's Constitution. In fact, Plaintiffs' state court lawsuits also seek relief under federal law. Therefore, Plaintiffs have an adequate opportunity to raise all of their claims, including those federal claims, in the state court proceedings." *Id*, at *2.

Two months later, the Jackson County Circuit Court issued its opinion on the Second State Court Case on July 26, 2016. The circuit court dismissed Plaintiffs' Second State Court Case and affirmed the ZBA's determinations. The circuit court held that the ZBA's decision "complied with the requisite laws and procedures, was supported by competent, material, and substantial evidence, and represented a reasonable exercise of discretion." (Pl. Resp., Dkt. 19, at 11; PgID 488.) Plaintiff appealed the Second State Court Case decision to the MCOA, Court of Appeal File No. 334355. The MCOA consolidated Plaintiffs' appeals of the First and Second State Court Case and issued an extensive 17 page per curium opinion on February 28, 2017 which addressed each of the two lawsuits and concurred with both the lower courts' dismissals.

Before taking up the substance of the ordinance the MCOA first took great care to address and define the scope of Plaintiffs' appeal. Plaintiffs initially sought from the ZBA, interpretation of the zoning ordinance itself and also sought administrative review of the Zoning Administrator's issuance of the stop-work order. The circuit court then reviewed the ZBA's determinations, and the MCOA states clearly it is reviewing both the interpretation of the ordinance as well as the issuance of the stop-work order decisions again. "[T]he ZBA's hearing constituted, in effect, an appeal of defendant's previous interpretation *and*

*enforcement* of the zoning ordinance." *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *12 (emphasis added). "[A]lthough plaintiffs specifically requested interpretation of the zoning ordinance, it is clear that they were, in effect, also seeking review of the Township Zoning Administrator's issuance of the stop-work order. . . .[plaintiffs] clearly sought a determination of whether their proposed land use was permitted under the ordinance and whether the stop-work order was improper." *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *6.

The MCOA affirmed the lower court's decision that Plaintiff's intended use was not permitted under the zoning ordinance and that the decisions were not based on objection to the swinger lifestyle. The MCOA stated "it is clear, simply based on the anticipated spaces inside the building and the projected activities and amenities, that [P]laintiffs' proposed use did not constitute a "club" as the term is used under [the local zoning ordnance], regardless of the sexual preferences of the patrons." *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *9. "[T]he substance of plaintiffs' proposed use, regardless of its label, was not a permitted use in the C-2 zoning district." *Id.* "[T]he ZBA's decision was not dependent on the fact that the prospective patrons of this establishment were 'swingers,' or that the anticipated members would patronize the club and participate in club activities in order to meet other adherents of the 'swinger's lifestyle.' " *Id.*

The MCOA also affirmed the lower court's decision regarding the three constitutional claims Plaintiffs had raised. Plaintiffs claimed the Township had violated their rights with their "interpretation of the ordinance and the stop-work order issued by the Zoning Administrator." *Id.* at *11. The MCOA held Defendants had no procedural due process liability since "[P]laintiffs were given an extensive opportunity to present arguments and

evidence in support of their position before a decision was rendered and the chance to respond before final action was taken." *Id.* at 12 (internal marks omitted) (citing *Hughes v. Almena Twp.*, 284 Mich. App. 50, 69 (2009)). Defendants had no substantive due process liability, where "plaintiffs again fail to recognize the evidence in the record demonstrating the actual nature of their proposed use, which was not a mere 'private membership club.' The ZBA's interpretation was reasonable, and the circuit court did not err in affirming." *Id.* at 13. Defendants had no first amendment liability where Plaintiffs failed to identify any speech or expressive conduct which they intended to convey a particular message and where neither the zoning ordinance itself nor the ZBA's decision were content-based or targeting speech based on communicative content. *Id.* at 15.

The MCOA then addressed the First State Court Case. Plaintiffs had filed the First State Court Case prior to seeking the ZBA review resulting in the circuit court dismissing it, without prejudice, because Plaintiffs had not exhausted administrative remedies. Plaintiffs' argument on their appeal was that they were not required to pursue administrative remedies, that they had a "vested right" in their proposed land use based on the permits that Defendants initially issued to them.

The MCOA stated "the gravamen of plaintiffs' appeal in [the First State Court Case] is that they should not be require to take any action before the ZBA and, instead, this Court should reinstate the prior circuit court action and enter a judgment in favor of plaintiffs." *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *15. The court goes on to state that Plaintiffs nevertheless did "file an appeal with the ZBA, seeking interpretation of the [zoning ordinance] based on their claim that defendant erroneously interpreted the [zoning ordinance] and, therefore, improperly issued a stop-work order." *Id.*

9

The MCOA determined that because Plaintiffs proceeded with the ZBA review, their argument here was rendered moot. Any outcome could have no practical legal effect upon the existing controversy because "a separate factual and procedural record has been developed." *Id.* at 16. "[T]o the extent that plaintiffs maintain in the [First State Court Case] that their proposed use is permitted under the ordinance and, in addition, raise a series of claims related to defendant's interpretation of the zoning ordinance and issuance of the stop-work order, the proper place for those claims to be decided is in an appeal of the ZBA's determination, which is currently before us in [Second State Court Case] and which we have considered in detail." *Id.* at 17. The MCOA also stated, "[a]lternatively, at the very least, it is no longer appropriate for us to analyze plaintiffs' claims in that matter given the factual and legal findings made by the ZBA and the circuit court after plaintiffs filed their appeal." *Id.*

Regarding the First State Court Case the MCOA reasoned in the alternative that the claims were not developed in the lower court. The MCOA noted "the lack of clarity in the record regarding the specific nature of the zoning-related filings and administrative decisions that were made before defendant ultimately issued the stop-work order." The MCOA further noted that the First State Court Case was dismissed without prejudice meaning to the extent that any claim remains, if any such claim exists, Plaintiffs would be free to bring that claim again.

The MCOA opinion was issued February 28, 2017. A year later, on February 27, 2018, Plaintiffs filed the current two count complaint. In Count One, Plaintiffs' claim Defendants violated their First Amendment and Equal Protection Rights, in violation of 42

U.S.C. § 1983.  In Count Two, Plaintiffs' claim Defendants conspired to violate their civil rights in violation of 42 U.S.C. § 1985.

Plaintiffs assert Defendants' committed an "intentional, overt conspiracy to prevent [P]laintiffs from opening a business which [D]efendants considered to be morally repugnant, and in the process deprived plaintiffs of their federally-protected constitutional rights." (Compl. ¶ 10, Dkt. 1 at 3.)  Specifically, Plaintiffs object to Defendants' zoning-related filings and administrative decisions, including the stop-work order, which they claim violated their equal protection and first amendment rights.  Plaintiffs assert the Second State Court Case "case and controversy was unrelated to the case and controversy asserted in Plaintiffs First State Court Case."  (Pl. Resp. to Mot., Dkt. 19, at 11; PgID 488.)  Plaintiffs do not address or differentiate their complaint from the fact that "the ZBA hearing constituted, in effect, an appeal of [D]efendant's previous interpretation *and enforcement* of the zoning ordinance." *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *12 (emphasis added).

## II.  LEGAL STANDARD

Through its present motion, Defendants seek dismissal of both of the claims asserted in Plaintiffs' complaint under Fed. R. Civ. P. 12©, motion for judgment on the pleadings. Such motions are reviewed under the same standard as a motion to dismiss, Fed. R. Civ. P. 12(b)(6).  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012).

When determining whether Plaintiff's claims are subject to dismissal under Rule 12(b)(6) the complaint is reviewed for failure to state a claim.  The Court must construe the complaint in a light most favorable to Plaintiff and accept all well-pleaded factual allegations as true.  *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.

2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

The Supreme Court has emphasized that this plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679, 129 S. Ct. at 1950 (internal quotation marks, alteration, and citation omitted). If a plaintiff does "not nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed.R.Civ.P. 10©). "A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* at 335-36; *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim") (internal quotation marks and citations omitted).

## III. ANALYSIS

### A. Whether Collateral Estoppel Bars Plaintiffs' Claims

"[I]ssue preclusion prevents parties from 'raising an argument that they already fully litigated in an earlier legal proceeding.' " *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 Fed.Appx. 484, 488-89 (6th Cir. 2017) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015)). "[I]ssue preclusion, bars 'successive litigation of an *issue of fact or law* actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.' " *Arkansas Coals, inc. v. Lawson*, 739 F.3d 309, 320 (6th Cir. 2014) (emphasis added) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)).

For issue preclusion to apply, four elements must be met: (1) the prior proceeding must have raised and litigated the precise issue; (2) determination of the issue was a

critical and necessary part of the decision in the prior proceeding; (3) the prior proceeding must have ended with a final judgment on the merits; and (4) the party being precluded must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Arkansas Coals*, 739 F.3d at 320-21. "Mutuality between the parties is not required in defensive collateral estoppel cases so long as 'the plaintiff has had a full and fair opportunity to litigate the contested issue previously.' " *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098-99 (6th Cir. 2012) (quoting *McAdoo v. Dallas Corp.*, 932 F.2d 522, 523 (6th Cir. 1991)).

Defendants argue, and the Court agrees, Plaintiffs are collaterally estopped from arguing that their proposed land use, fell within the permitted uses in the C-2 zoning district. The MCOA has determined, after much review, that Plaintiffs' proposed use did not constitution a "club or lodge" under the zoning ordinance, that Plaintiffs' proposed use was more accurately described as a "night club," and that Plaintiffs' plan was not a permitted use under the zoning ordinance. *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *9. Plaintiffs are also estopped from arguing that the stop-work order, violated Plaintiffs' First Amendment, or Due Process rights. The MCOA specifically determined that the scope of their review included the Zoning Administrator's issuance of the stop-work order. Plaintiffs' argued to the ZBA, to the circuit court, and finally to the MCOA that the stop-work order was improper but all three determined it was objectively, and constitutionally appropriate.

In each of the above instances (1) the Second State Court Case raised and litigated these precise issues; (2) it was critical and necessary for the MCOA to make these determinations to resolve Plaintiffs' appeal of the Second State Court Case; (3) the Second

14

State Court Case ended with a final judgment on the merits; and (4) Plaintiffs had a full and fair opportunity to litigate the issues before the ZBA, the circuit court, and the MCOA. *Arkansas Coals*, 739 F.3d at 320-21.

Issue preclusion "bars the relitigation of issues, regardless of the nature of the legal claims." *W.J. O'Neil*, 700 Fed.Appx. at 490. Plaintiffs' new claims even against newly named defendants does not alter these previously determined legal decisions. Plaintiffs' proposed land use was not permitted under the ordinance and the stop-work order did not violate Plaintiffs due process or first amendment rights.

### B. Whether Res Judicata Bars Plaintiffs' New Claims

In view of Plaintiffs' prior state-court lawsuits, all of Plaintiffs' newest claims are also barred by Defendants' affirmative defense of claim preclusion. "The preclusive effect of a state court judgment is determined by that state's law." *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004) (internal quotation marks omitted)[2]. Under Michigan law, a "second subsequent action" is barred by res judicata [i.e. claim preclusion] where: (1) a prior action was decided on the merits, (2) the issue contested in the second action was either actually resolved in the first case or could have been resolved in the first case if the parties, exercising reasonable diligence, had brought it forward, and (3) both actions involve the same parties or their privies. *Paige v. City of Sterling Heights*, 720 N.W.2d 219, 234 n.46 (Mich. 2006); *see also Washington v. Sinai Hosp. of Greater*

---

[2] "The *res judicata* effect of a state-court judgment in federal court is governed by the Full Faith and Credit Act, 28 U.S.C. § 1738," and "[w]ell-settled law directs federal courts to 'give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' " *Young v. Township of Green Oak*, 471 F.3d 674, 682 (6th Cir. 2006) (quoting *Migra v. Warran City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

*Detroit*, 733 N.W.2d 755, 759 (Mich. 2007). Michigan courts apply res judicata broadly, barring "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*, 874 F.3d 271, 274 (6th Cir. 2017) (citing *Adair v. State*, 470 Mich. 105 (2004)).

The Court finds the Second State Court Case is a prior action, decided on the merits, arising from the same transactions and that Plaintiffs could have raised these claims in their earlier suits as they were both aware of them and capable of bringing them at that time. The present matter and the Second State Court Case both arise from the Township's zoning ordinance and how Plaintiffs' proposed use of their property is regulated under that ordinance. The ZBA, the Michigan circuit court, and the MCOA, all reached final decisions, concluding that Plaintiffs' intended use of the Property violated the local zoning ordinance and that "the Zoning Administrator's issuance of the stop-work order" was proper. *Epicurean Developments, LLC v. Summit Twp.*, No. 329060, 2017 WL 786880 *6 (Mich. Ct. App. Feb. 28, 2017). All three decisions, including the MCOA's per curium decision, were reached based on evidence and not technical or procedural grounds.

Addressing the second element, Plaintiffs assert they could not have raised their current claims in the Second State Court Case. However Judge O'Meara, has already determined differently. He dismissed Plaintiffs' third lawsuit, filed here in the Easter District of Michigan District Court, based on abstention for this exact reason. *Epicurean Developments, LLC v. Summit Twp.*, No. 16-10609, 2016 WL 2986368 (E.D. Mich. May 24, 2016) (O'Meara, J.). Judge O'Meara explained,

Plaintiffs' federal complaint was filed pursuant to 42 U.S.C. § 1983, alleging deprivations of their due process, equal protection, and First Amendment rights resulting from the stop work order and the Township's interpretation of its zoning ordinance. Likewise, Plaintiffs' state court complaints allege similar violations of their procedural and substantive due process rights, as well as their right to free speech. Both courts are being asked to determine whether the Township's actions deprived Plaintiffs of their constitutional rights. . . .The state courts are capable of deciding Plaintiffs' federal constitutional claims as well, since those rights are similar to the rights protected under Michigan's Constitution. In fact, Plaintiffs' state court lawsuits also seek relief under federal law. Therefore, Plaintiffs have an adequate opportunity to raise all of their claims, including those federal claims, in the state court proceedings.

*Id.* at *2.

Plaintiffs "allegations about how Defendants unconstitutionally forced them to sit before Summit Township's ZBA after having already receive a valid building permit" are unsupported. (Pl. Resp. to Mot., Dkt. 19, at 16; PgID 493.) The MCOA addressed this phenomena of Plaintiffs misunderstanding the scope of their own litigation. "[A]lthough plaintiffs specifically requested interpretation of the zoning ordinance, it is clear that they were, in effect, also seeking review of the Township Zoning Administrator's issuance of the stop-work order." *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *6. "They clearly sought a determination of whether their proposed land use was permitted under the ordinance and whether the stop-work order was improper." *Id.* Even assuming Plaintiffs are correct that the MCOA did not address the exact claims brought in this suit, all of the facts were known prior to Plaintiffs' filing their Second State Court Case and bringing them here now is duplicative.

The final element for res judicata asks whether both actions involve the same parties or else parties in privity. The plaintiffs in the Second State Court Case and the present matter are identical. The Second State Court Case names Summit Township as the sole

defendant. In the present matter Summit Township is one of many defendants, the other listed defendants are the Township Board of Trustees and Zoning Administrator.

Plaintiffs challenge whether there is sufficient privity between Summit Township and the named individual defendants such that res judicata can bar Plaintiff's claims. Michigan law defines privity broadly:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both [1] a 'substantial identity of interests' and [2] a 'working functional relationship' in which [3] the interest of the nonparty are present and protected by the party in the litigation.

*Bates v. Twp. of Van Buren*, 459 F.3d 731, 734-35 (6th Cir. 2006) (quoting *Adaire*, 680 N.W. 2d at 396). "[A] perfect identity of parties is not required, only a substantial identity of interests that are adequately presented and protected by the first litigant." *AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*, 874 F.3d 271, 274 (6th Cir. 2017) (quoting *Adair*, 680 N.W.2d at 397.) "Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory or the 'cast of characters-defendants.' " *Georgia-Pacific Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012).

Plaintiffs assert that because their claims are against the Township officials in their individual capacities, as opposed to their official capacities, privity does not exist. Privity generally exists between a township official sued in their official capacity and the township, the opposite is generally true as to a township official sued in their personal capacity. *See Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003); *Connor v. Reinhard*, 847 F.2d 384, 394 (8th Cir. 1989) ("An official-capacity suit is really just another way of suing the

government. . . .Therefore, a city official sued in his official capacity is generally in privity with the municipality.").

However, this distinction between official capacity and personal capacity claims is not ironclad. Where there is a sufficient identity of interest between a government official and the governmental entity or where the inclusion of the personal capacity claim amounts to nothing more than a pleading artifice, privity may be found to exist regardless of the fact that the official has been sued in their personal capacity.

The Defendants here have a sufficiently close relationship and identity of interests with the Township that they should be deemed in privity with it. To find otherwise would be to "reward litigants who failed, intentionally or not, to include all relevant parties in an action and. . . .permit two (or possibly many more) attempts to try the same cause of action." *Fleming v. City of Detroit*, No. 04-74081, 2006 WL 2559862, at *6 (E.D. Mich. 2006) (Edmunds, J.) (internal citations omitted).

## C. Whether Plaintiffs State a Claim For Violation of 42 U.S.C. § 1983 - Count I

The Sixth Circuit recognizes six categories of federal zoning claims. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1215-16 (6th Cir. 1992). Plaintiffs' Complaint in Count I, alleges only two of these under 42 U.S.C. § 1983, (1) an Equal Protection claim, that Defendants acted under color of law to deny Plaintiffs of their Equal Protection Rights under the Fourteenth Amendment (Compl. ¶41) and (2) a First Amendment claim, that Defendants acted under color of law to deny Plaintiffs of their First Amendment Rights to freedom of speech (Compl. ¶42), freedom of expression (Compl. ¶43), and freedom of

association (Compl. ¶44).[3]  Plaintiffs use due process and takings type arguments and vocabulary, however, Plaintiffs do not make these constitutional arguments.

The Equal Protection Clause of the Fourteenth Amendment safeguards against the disparate treatment of similarly situated individuals as a result of government action that "either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).   The Clause provides that "[n]o State shall. . . .deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  It is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Clevurne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiffs' complaint does not assert that they are members of a suspect class[4], nor does it concern fundamental rights[5].  Instead, Plaintiffs are left with the rational basis

---

[3] Plaintiffs also cites two unpublished Sixth Circuit Court of Appeals cases, *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463 (6th Cir. 2008), and *D'Amico v. City of Strongsville*, 59 F.App'x 675 (6th Cir. 2003), both of which discuss property interests in the context of procedural due process constitutional claims.  The *Chandler* court stated "the holder of a building or zoning permit has a constitutionally protected [due process] interest."  296 F. App'x at 469.
       Plaintiffs response goes on to state "there should be no dispute.  Plaintiffs had a clearly established right to their property that vested with Summit Township issued a building permit."  (Pl. Resp. to Mot. to Dismiss, Dkt. 19, at 22; PgID 499.)  However, the *Chandler* court was referring to procedural due process rights which is not part of Plaintiffs' complaint and which the MCOA determined the Township did not violate in enforcing the zoning ordinance as pertained to Plaintiffs.  *Epicurean*, 2017 WL 786880, at *10-13.

[4] Plaintiffs are corporate entities and are not racial or ethnic minorities, women, or aliens.

[5] Fundamental rights under the Equal Protection Clause include the right to vote, the right to be a candidate, the right to migrate to another state, the right to marry and procreate and live as a family unit, and freedom from fees that prevent indigents from obtaining equal access to justice.

analysis, which requires Plaintiffs assert Defendants treated them differently than similarly situated businesses. This is sometimes called a "class-of-one" complaint. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "To succeed on this type of claim, a plaintiff must allege either disparate treatment from similarly situated individuals and that the government actor had no rational basis for the difference, or that the challenged government action was motivated by animus or ill-will." *Paterek v. Will. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (internal quotations omitted) (citing *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 549 (6th Cir. 2007) and *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012)).

As Defendants point out in their motion, Plaintiffs have not identified any other business similarly situated in the entirety of the Complaint. Plaintiffs fail to claim that Defendants treated them differently than any other business. (D. Mot. to Dismiss, Dkt. 12, at 25; PgID 357) (citing *TriHealth, Inc. v. Bd. of* Comm'rs, 430 F.3d 783, 790 (6th Cir. 2005); *Bench Billboard Co. v. Cincinnati*, 675 F.3d 974, 986 (6th Cir. 2012)). Defendants contend that there is no differential treatment toward Plaintiffs and Plaintiffs do not counter that assertion.

Instead Plaintiffs imply Defendants acted with animus, without making the actual legal argument. Plaintiffs claim that Defendants' had a moral objection to the idea of a swingers club and for that reason Defendants singled them out. However, the MCOA has already determined that the reason Defendants issued the stop-work order and the ZBA did not approve their permit was not based on moral objections but rather because their plan violated the zoning ordinance. The MCOA stated "it is clear, as the circuit court recognized, that the ZBA's decision was not dependent on the fact that the prospective

21

patrons of this establishment were 'swingers,' or that the anticipated members would patronize the club and participate in club activities in order to meet other adherents of the 'swinger's lifestyle.' To the contrary, it is clear, simply based on the anticipated spaces inside the building and the projected activities and amenities, that plaintiffs' propose use did not constitute a 'club' as the term is used [in the zoning ordinance], regardless of the sexual preferences of the patrons." *Epicurean Developments, LLC*, No. 329060, 2017 WL 786880, at *9

Plaintiffs' second claimed constitutional violation asserts Defendants took government action to violate their First Amendment rights. Plaintiffs have not identified any speech or conduct that was intended to convey a particular message. Plaintiffs admit the Township's Moratoriums themselves do not represent constitutional violations[6] (Pl. Resp., Dkt. 19, at 23; PgID 500) and the MCOA already addressed any remaining state actions as specifically relates to the First Amendment. The MCOA determined the application of the Township's zoning ordinance, the stop work order, and the subsequent ZBA review, did not violate Plaintiffs' first amendment rights. *Epicurean*, 2017 WL 786880, at *13-15. In a section entitled "First Amendment", the court stated there is no indication that the Township Zoning Ordinance "whether on its face or as applied - or the ZBA's decision, functioned as a restriction on expression because of its message, its ideas, its subject matter, or its content." *Epicurean*, 2017 WL 786880, at *14 (citing *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015)). The ZBA "did not determine that [P]laintiffs' proposed use failed

---

[6] Defendants invoked absolute legislative immunity regarding the Township legislative body's decision to issue a moratorium on certain zoning ordinance permits. Plaintiffs responded "Plaintiffs do not argue that Summit Township's moratoriums were themselves constitutional violations." (Pl. Resp. to Mot., Dkt. 19, at 23; PgID 500.)

to qualify under the 'clubs and lodges' category based on speech or expressive conduct." *Id.* Neither the Township Zoning Ordinance nor the ZBA's "decision was content-based in term of 'target[ing] speech based on its communicative content." *Id.* at *15 (citing *Reed*, 135 S. Ct. at 2226).

"As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coal*, 535 U.S. 234, 245 (2002). First Amendment protections extend only to speech or "conduct that is inherently express." *Rumsfeld v. Forum for Acad & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). The Court finds Plaintiffs have failed to articulate what speech or expressive conduct, the government unconstitutionally restricted.

Plaintiffs have not made valid constitutional claims.

### D.  Whether Plaintiffs State a Claim For Violation of 42 U.S.C. § 1985 - Count II

Only conspiracies motivated by racial or otherwise class-based, invidiously discriminatory animus fall within the ambit of 42 U.S.C. § 1985. *See Griffen v. Breckenridge*, 403 U.S. 88, 201 (1971). The class must be a suspect class subject to heightened protection under the Equal Protection Clause. *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980). Plaintiffs have not alleged that they are a member of any particular class or that the alleged conspiracy was motivated by any class-based discriminatory animus. Plaintiffs have not pled sufficient facts for a § 1985 complaint.

Evidence of a conspiracy under § 1983 requires: (1) a single plan, (2) that the alleged co-conspirators shared in the general conspiratorial objective to deprive Plaintiffs of their constitutional rights, and (3) that an overt act was committed in furtherance of the conspiracy that caused Plaintiffs injury. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th

Cir. 2011) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)); *see also Memphis, TN Area Local v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). A conspiracy claim "must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987); *See Horton v. Martin*, 137 Fed.Appx. 773 (6th Cir. 2005); *see also Moldowan v. City of Warren*, 578 F.3d 351, 390-91 (6th Cir. 2009).

Plaintiffs' allegations in support of their conspiracy claim are vague and conclusory. Plaintiffs have failed to plead that a constitutional right was violated. They have also failed to explain any single plan, engaged in by all the named defendants.

### E. Whether Individually Named Defendants are Entitled to Qualified Immunity

The doctrine of qualified immunity shields government actors from being sued in their individual capacity for civil damages resulting from tortious acts committed while performing discretionary functions. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The immunity applies "[a]s long as [the official's] actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To succeed on a § 1983 claim, a plaintiff must demonstrated that (1) the government actor violated his or her constitutional rights, and (2) that the right in question was clearly established law at the time the injury was sustained. *Saucier v. Katz*, 533 U.S 194, 199 (2001).

To establish personal liability under § 1983, a plaintiff must show that each defendant charged "caused the deprivation of a federal rights." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[A] plaintiff must plead that each Government-official defendant, through the

24

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (personal involvment by the defendant is an essential element in a § 1983 cause of action asserting a constitutional deprivation).

Defendants contend that each of the named Defendants is entitled to qualified immunity with respect to both of the constitutional claims. First Plaintiffs have not sufficiently pled their constitutional claims. Assuming argumendo that Plaintiffs' Equal Protection and/or First Amendment claims survived, Plaintiffs fall short again at the clearly established prong. To determine whether a right is clearly established the dispositive inquiry is whether, at the time of injury, the law was "sufficiently clear [such] that a reasonable official would understand that what he [was] doing violate[d]" the plaintiffs constitutional rights. *Binay v. Bettendorf*, 601 F.3d 640, 646-47 (6th Cir. 2010) (internal quotation marks omitted).

Here the injury in question, the stop-work order which prevented Plaintiffs' from continuing to renovate and eventually open their club, has already been reviewed by two courts, the circuit court and the MCOA. Both courts determined that the stop-work order was constitutional. A reasonable official in the position of Defendants could have believed, as the courts subsequently did, that their actions did not violate Plaintiffs' constitutional rights. Plaintiffs thus fail to adequately address the clearly established prong to succeed on their § 1983 claims. Defendants are entitled to qualified immunity since Plaintiffs have not established that the rights in question were clearly established law such that any reasonable official should have been aware.

## IV. CONCLUSION

Defendants have met their burden. For the reasons set forth above the Court GRANTS Defendant's motion for judgment on the pleadings and DISMISSES Plaintiffs' complaint with prejudice.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 19, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 19, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager